**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES** | : |
| | :     **3:17-CR-129** |
| | : |
| v. | |
| | :     **(JUDGE MANNION)** |
| | : |
| **ISAIAH MOORE-BROWN,** | : |
|     **Defendant** | : |

**MEMORANDUM**

**I.    BACKGROUND**

On May 1, 2020, defendant Isaiah Moore-Brown, an inmate at FCI-Butner, North Carolina, filed, *pro se*, a Motion for Reduction of Sentence under 18 U.S.C. §3582(c)(1)(A), and request for immediate transfer to home confinement, which the court construes as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, related to his 101-month aggregate prison sentence, alleging "extraordinary and compelling reasons" due to the COVID-19 pandemic. (Doc. 65).[1] In particular, defendant seeks the court to

---

[1]The court notes that although defendant cites to §3582(c)(1)(A) as the statutory basis for his motion, the court does not find his filing as a motion against the government. Rather, upon review, the court finds that it is a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. *See* Cordaro v. Finley, 2020 WL 2084960 (April 30, 2020). Thus, defendant is actually the petitioner, and the proper respondent is the Warden at FCI-Butner. *See* 28 U.S.C. §2243. "The writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate

1

alter his prison sentence and to immediately release him from confinement in prison at FCI-Butner to home confinement, due to his fear that he may contract the COVID-19 virus in prison and, his fear that if he does, based on his alleged chronic medical condition, asthma, he will be at greater risk to suffer more severe consequences. Alternatively, the court construes defendant's filing as a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i).

For the reasons set forth below, the court will construe defendant's motion as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241, and it will transfer his case to the Eastern District of North Carolina, where jurisdiction properly arises.²

---

custody of the party detained, with the power to produce the body of such party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004).

² "There is a judicially created exhaustion requirement for habeas petitions brought under 28 U.S.C. §2241." Furando v. Ortiz, 2020 WL 1922357, *3 (D.N.J. April 21, 2020) (citing Callwood v. Enos, 230 F.3d 627, 633-34 (3d Cir. 2000)). *See also* Varela v. Johns, 2011 WL 3438430 (E.D.N.C. Aug. 5, 2011). Even though it appears that defendant has not exhausted all of his administrative remedies available with the BOP regarding his habeas petition, the court will leave it up to the District Court that has jurisdiction over her petition to decide whether it should be dismissed without prejudice. *See* Furando, *supra* (court dismissed without prejudice the habeas petition of inmate serving his federal sentence at FCI-Fort Dix who sought immediate release to home confinement under the CARES Act, based on the COVID-19 virus, due to his failure to exhaust his BOP administrative remedies available under 28 C.F.R. §§542.10 to 542.19.).

2

Insofar as defendant's filing is considered as a motion for compassionate release, it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i).[3] To the extent defendant is seeking the court to order the BOP to deem him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[4]

---

[3]Since defendant is proceeding *pro se*, the court liberally construes his motion as also seeking relief pursuant to the CARES Act in addition to a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A). In fact, in his April 9, 2020 "compassionate release letter", which he indicates he sent to the Warden at FCI-Butner, and which he attached to his motion, (Doc. 65 at 8-9), defendant requests release from prison under the CARES Act. Defendant also states in his motion that he submitted an amended compassionate release request to the Warden on April 11, 2020.

[4]Even though the government has not yet responded to defendant's motion, in light of the emergency nature of the motion, the court will transfer it to the proper District to the extent it is a §2241 habeas petition. Also, insofar as defendant's motion can be construed as one for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A), the court can act *sua sponte* to dismiss it based on lack of jurisdiction since it is apparent on the face of the motion that defendant did not exhaust his administrative remedies.

3

Case 5:20-hc-02076-FL   Document 2   Filed 05/08/20   Page 3 of 17

## II. DISCUSSION[5]

In his present filing, (Doc. 65), defendant seeks his immediate transfer from FCI-Butner to home confinement and requests the court to allow him to serve the remainder of his 101-month prison sentence in home confinement stating that he is at a higher risk if he contracts the COVID-19 virus based his alleged chronic asthma condition. He also alleges that due to his medical condition he is more susceptible to suffer from severe complications if he contracts the virus. Further, defendant points out that he has served more than 3 years of his 101-month prison sentence and, he states that in 36 months he will be eligible for release to a halfway house. Defendant also alleges that currently "there are 66 inmates with COVID-19, 26 staff members, and 5 inmate deaths" at FCI-Butner. Defendant further appears to allege that based on the open dormitory type setting in the prison and the "massive [prison] population", that recommended safe practices to curtail the spread of the virus cannot be accomplished. As such, defendant contends that since the COVID-19 virus has been introduced at the prison, it is spreading quickly.[6]

---

[5]Defendant is currently serving a 101-month prison sentence that was imposed on December 17, 2018, after he pled guilty to possession with intent to distribute cocaine base (crack), 21 U.S.C. §841(a)(1), and possession of firearms in furtherance of drug trafficking, 18 U.S.C. §924(c)(1)(A). Specifically, the court then sentenced defendant to an aggregate term of imprisonment of 101 months, and ordered him to be on 6-years of supervised release.

[6] Since this court is well-aware of all of the safety measures implemented by the BOP in response to the COVID-19 virus, *see* Cordaro,

4

Defendant also references a March 26, 2020 Memorandum from U.S. Attorney General William Barr regarding guidelines to the BOP for the implementation of the CARES Act, §12003(b)(2), and directing the BOP to identify suitable inmates for home confinement with COVID-19 risk factors. Thus, liberally construed, he can be deemed as claiming that he is the type of inmate who meets Barr's criteria for release to home confinement due to the COVID-19 pandemic.

Defendant concludes that based on the alleged conditions of the FCI-Butner and his medical condition an "extraordinary and compelling" situation exists in his case for the court to direct the BOP to immediately place him in home confinement to complete the service of his prison sentence.

As this court recently did in Cordaro, 2020 WL 2084960, *3, as well as other similar cases, *see e.g.,* United States v. Taylor, 2020 WL 2084974 (M.D.Pa. April 30, 2020), the court will construe defendant's instant filing as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.

No doubt that a habeas petition under §2241 is the proper vehicle for an inmate to challenge "the fact or length of confinement", Presser v. Rodriguez, 411 U.S. 475, 494 (1973), or the "execution" of his confinement. Woodall v. Fed. BOP, 432 F.3d 235, 241-42 (3d Cir. 2005). Further, the court must look to the remedy requested by the inmate to determine if he is

*supra* (citing Doc. 544 at 15-18), and since many of the measures are found on the BOP's website, they are not repeated herein. Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/.

seeking relief available in a habeas petition. "When a petitioner seeks immediate release from custody, the 'sole federal remedy' lies in habeas corpus." Camacho Lopez v. Lowe, 2020 WL 1689874, *8 (M.D.Pa. April 7, 2020) (citing Presser, 411 U.S. at 500).

In Camacho Lopez, the petitioner was an ICE detainee subject to a final removal order whose removal was set for March 30, 2020, but delayed due to his COVID-19 diagnosis. The petitioner filed a §2241 habeas petition seeking immediate release from confinement based on "the threat posed by the COVID-19 viral pandemic." The respondent argued that Camacho Lopez's petition should be construed as a civil rights action under 42 U.S.C. §1983. The court found that "the extraordinary conditions of confinement" "where the petitioner tested positive for and had been hospitalized by a potentially deadly pandemic virus and claims that officials cannot properly treat him---constitute the extreme case in which habeas relief might be available." *Id.* at 13. The court then concluded that based on the case's unique circumstances, "both the claim brought and the remedy sought are cognizable in habeas corpus." *Id.* The court found, however, that Camacho Lopez's continued detention in prison was proper and dismissed his habeas petition. *See also* Verma v. Doll, Civil No. 4:20-14, (M.D.Pa. April 9, 2020) (court found petitioner, an ICE detainee, "plainly seeks a habeas remedy" where he requested immediate release from custody based on alleged "constitutionally deficient conditions of confinement that threaten his life and health" in light of the COVID-19 pandemic); Saillant v. Hoover, 2020 WL

1891854, *3 (M.D.Pa. April 16, 2020) (the court agreed with the conclusions of the courts in Verma and Camacho Lopez "finding that a claim based on the COVID-19 pandemic [at CCCF by ICE detainee] is exactly the sort of 'extreme case' contemplated in [Ali v. Gibson, 572 F.2d 971 (3d Cir. 1978)]" "in which a petitioner may challenge the conditions of his confinement through a petition for writ of habeas corpus.").

In the present case, as in the above cited cases and as well as in Cordaro, 2020 WL 2084960, *4, and Taylor, *supra*, although defendant is not an ICE detainee awaiting his removal, he similarly seeks immediate release from custody at FCI-Butner since he believes his health is in imminent risk at the prison allegedly since both staff and inmates have contracted the COVID-19 virus and the possibility that he may contract the COVID-19 virus, which "is unequivocally a habeas remedy." United States v. Serfass, 2020 WL 1874126, *2 (M.D.Pa. April 15, 2020) (citation omitted). As the court in Camacho Lopez explained, 2020 WL 1689874, 11, the term "execution" of a petitioner's sentence is broadly defined by the Third Circuit "to include such matters as administration of parole, sentence computation, prison disciplinary proceedings, prison transfers, and even 'conditions' generally." (citing Woodall, 432 F.3d at 241-44).

In his instant filing, as in Cordaro, 2020 WL 2084960, *4, defendant clearly seeks relief that affects the execution of his 101-month prison sentence since he requests the court alter its terms and to immediately release him to home confinement. *See* Cordaro, 2020 WL 2084960, *4.

7

Defendant does not challenge the conditions of his confinement at FCI-Butner and seek damages, and thus his filing is not a civil rights action. *See* Parmeley v. Trump, 2020 WL 1987366, *2 (S.D.Ill. April 27, 2020) (court held that proposed class action civil rights complaint filed by inmates incarcerated in federal prison and in BOP custody who sought release from prison due to the COVID-19 virus was not a remedy that was available under Section 1983 or Bivens, and that "[a] petition for a writ of habeas corpus is the proper route if a prisoner is seeking 'what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation.'") (citation omitted).

Defendant indicates that he filed a request on April 9, 2020 and an amended one on April 11, 2020, with the Warden, seemingly, pursuant to BOP 5050.50 as well as the CARES Act, for compassionate release to home confinement due to the COVID-19 virus. However, it appears that to date he did not receive a reply from the Warden. In any event, defendant alleges that attempting to exhaust his BOP administrative remedies would be futile and incapable of granting adequate relief, and that the COVID-19 virus along with his medical condition present an extraordinary situation in which exhaustion should be waived. He also alleges that he will be prejudiced by any delay since it may result in "catastrophic health consequences" if he does contract the virus.

It is clear that defendant has not exhausted all of his BOP administrative remedies prior to his instant filing. Assuming *arguendo* that Warden did deny defendant release to home confinement, he must still file an appeal with the BOP Regional Director, within 20 calendar days of the date the Warden signed the response. 28 C.F.R. §542.15(a). Then if the Regional Director denies his appeal, defendant must appeal that decision to the BOP General Counsel, within 30 calendar days from the date the Regional Director signed the response. *Id*. The appeal to the General Counsel is the final administrative appeal in the process. *Id*. Nonetheless, as noted, the court will let the court with jurisdiction over defendant's filing determine if defendant exhausted his administrative remedies.

Also as noted, the court liberally construes defendant as claiming that due to the threat that he may contract the COVID-19 virus at FCI-Butner he qualifies to be immediately released to home confinement based on the CARES Act and pursuant to the FSA, 18 U.S.C. §3582(c)(1)(A). "As amended by the First Step Act, 18 U.S.C. §3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Feiling, 2020 WL 1821457, *4 (E.D.Va. April 10,

9

Case 5:20-hc-02076-FL   Document 2   Filed 05/08/20   Page 9 of 17

2020). As stated even though defendant has requested compassionate release to the Warden at FCI-Butner on April 9 and 11, 2020, and it is not clear if the Warden responded to the requests, defendant's motion for compassionate release must be dismissed for lack of jurisdiction since he has clearly not exhausted his administrative remedies under §3582(c)(1)(A), "which requires that a defendant seeking compassionate release present [her] application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that [her] sentence should be modified, or (2) wait for 30 days to pass." United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020). *See also* United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020) (court held that defendant failed to fully exhaust his administrative remedies with respect to his motion for compassionate release "[b]ecause the Warden explicitly denied his [] request, [defendant] needed to exhaust by appealing the Warden's decision." (citing 28 C.F.R. §542.15(a); B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D. Ky. Mar. 27, 2020) (denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence)). Here, even if defendant received a

10

negative response from the Warden, it is apparent that he has not appealed any such decision.

Secondly, the court cannot yet determine if defendant has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence even though he alleges he has asthma which he claims is a recognized medical condition putting him at a higher risk if he contracts COVID-19 and even though he alleges that there are cases of the virus currently at FCI-Butner, since he has not exhausted his administrative remedies. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence."); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

Further, defendant does not demonstrate any "catastrophic health consequences" to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP. *See* Zukerman, 2020 WL 1659880, *3. Rather, he only speculates that

11

if he does contract the COVID-19 virus in the future, he may suffer more severe complications from it.

As the Third Circuit in Raia, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* Feiling, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in Raia] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement); Smith, *supra* (same).

Moreover, the Third Circuit in Raia, 954 F.3d at 597, stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *See also* Feiling, 2020 WL 1821457, *7 ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification

under that provision."); United States v. Soto, 2020 WL 1875147, *1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); United States v. Boyles, 2020 WL 1819887, *2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); United States v. Wright, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement.").

Additionally, insofar as defendant is construed as relying on the CARES Act, which was signed into law on March 27, 2020, as the basis for his release to home confinement, such reliance is misplaced.

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum

13

amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. *See* United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."). In fact, the CARES Act "does not mandate home confinement for any class of inmate." Valenta v. Ortiz, 2020 WL 1814825, *1 (D.N.J. April 9, 2020).

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id*.

14

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020, the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3; Cruz, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; Cordaro, 2020 WL 2084960, *6.

In short, the court agrees with my colleagues in this district who, to date, have unanimously concluded that emergency petitions for release, based on COVID19 are properly construed pursuant to 28 U.S.C. §2241. (In addition to Camacho Lopez and Verma, *see also* Brown v. U.S. Dept of Homeland Security, 3:20-cv-119; Umarbaev v. Warden, 1:20-cv-413; Saillant, supra; and Thakker v. Doll, 1:20-cv-480.) I agree with my colleague's well-reasoned analysis and join in their conclusion that 28 U.S.C §2241 is the proper vehicle to proceed. Therefore, the court finds that defendant's motion should be construed as a §2241 habeas petition since he seeks relief affecting how his sentence is executed, i.e., serving his sentence in home confinement as opposed to confinement in prison to which he was sentenced. *See* United States v. Serfass, 2020 WL 1874126 (M.D.Pa. April 15, 2020).

A petitioner may seek §2241 relief only in the district in which he is in custody. United States v. Figueroa, 349 F. App'x 727, 730 (3d Cir. 2009).

15

This Court has no jurisdiction over defendant's habeas claims as he is not detained within this district at the time of the filing of his motion. As such, defendant must file his §2241 habeas petition in the U.S. District Court for the Eastern District of North Carolina since he is confined in prison in that district. Pursuant to 28 U.S.C. §2243, "[t]he writ, or order to show cause shall be directed to the person having custody of the person detained. These provisions contemplate a proceeding against some person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge." Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004). Thus, for purposes of a habeas action, the petitioner's custodian is the warden of the institution holding the petitioner. *Id.* at 442. In the instant case, the only appropriate respondent is the Warden of FCI-Butner, where defendant is currently confined.

In light of the foregoing, the court will direct the clerk of court to docket defendant's Doc. 65 motion as an emergency §2241 habeas petition and to assign it a separate civil number. The court will then direct the clerk of court to transfer defendant's habeas petition to the U.S. District Court for the Eastern District of North Carolina.

### III. CONCLUSION

Defendant's Motion to Reduce Sentence and for Immediate Release to Home Confinement related to the COVID-19 pandemic, **(Doc. 65)**, is construed as a petition for writ of habeas corpus pursuant to 28 U.S.C.

§2241, and the clerk of court will be directed to docket defendant's Doc. 65 motion as an emergency §2241 habeas petition and to assign it a civil number. The clerk of court will then be directed to transfer defendant's §2241 habeas petition to the U.S. District Court for the Eastern District of North Carolina as the proper jurisdictional court. To the extent that defendant's filing is considered as a motion for compassionate release, it is properly filed, will remain in his criminal case and be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Finally, insofar as defendant is challenging any decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: May 8, 2020**
17-129-01